IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| KYLEE M. PAUGH,<br>        Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | EP-20-CV-154-DB |
| LOCKHEED MARTIN<br>CORPORATION,<br>        Defendant. | §<br>§<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant Lockheed Martin Corporation's

("Lockheed Martin") "Motion for Partial Dismissal" ("Motion") filed on July 2, 2020.   ECF

No. 12.   Plaintiff Kylee M. Paugh ("Ms. Paugh") filed a Response to the Motion on July 8,

2020.   ECF No. 14.   Lockheed Martin filed a Reply on July 15, 2020.   ECF No. 15.   Upon

due consideration, the Court grants Lockheed Martin's Motion for Partial Dismissal.

## BACKGROUND

In 2018, Ms. Paugh worked for Tapestry Solutions, Inc. ("Tapestry Solutions")

pursuant to a contract Tapestry Solutions had to provide certain services to the United States

Department of the Army at Fort Bliss, Texas ("the Army").   Pl.'s First Am. Compl. ¶¶ 8–9,

ECF No. 10; Mot. 2, ECF No. 12.   Tapestry Solutions's contract with the Army expired on

December 31, 2018.   Pl.'s First Am. Compl. ¶ 9, ECF No. 10.   On January 1, 2019, Lockheed

Martin took over the services Tapestry Solutions was previously contracted to provide to the

Army.   Pl.'s First·Am. Compl. ¶¶ 11–12, ECF No. 10; Mot. 2, ECF No. 12.

Ms. Paugh argues that, as the successor contractor to Tapestry Solutions,

Lockheed Martin was required to offer Tapestry Solutions employees, including herself, "a right

of first refusal of employment."   Pl.'s First Am. Compl. ¶¶ 16, 18, ECF No. 10 (citing

Executive Order 13495, Nondisplacement of Qualified Workers Under Service Contracts, 74 FR 6103; Federal Acquisition Regulation, 48 CFR 52.222-17, Nondisplacement of Qualified Workers; McNamara-O'Hara Service Contract Act, 41 U.S.C. §§ 6701–07).   Furthermore, Ms. Paugh claims that Lockheed Martin was not allowed to post employment openings under the contract until it provided the right of first refusal of employment.   *Id.* ¶¶ 17, 19.

Ms. Paugh alleges that Lockheed Martin never offered her a right of first refusal of employment even though it was required.   *Id.* ¶ 20.   Instead, Lockheed Martin "posted job openings and required the Tapestry Solutions employees to apply for positions of employment." *Id.* ¶ 21.   Ms. Paugh applied for nine positions with Lockheed Martin but was not hired for any of them.   Pl.'s First Am. Compl. ¶ 21, ECF No. 11; Mot. 2, ECF No. 12.   To fill those nine positions, Ms. Paugh claims, "Lockheed Martin offered rights of first refusal to the eight male Tapestry Solutions employees, and the eight workers accepted the offers for the positions and were hired."   Pl.'s First Am. Compl. ¶ 21, ECF No. 10.   Further, "Lockheed Martin hired one man from outside Tapestry Solutions and Lockheed Martin."   *Id.*

Based on these actions, Ms. Paugh filed an original charge of sex discrimination against Lockheed Martin with the Equal Employment Opportunity Commission ("EEOC") on February 15, 2019.   *Id.* ¶¶ 27, 29.   Lockheed Martin responded to Ms. Paugh's charge in a position statement filed with the EEOC on September 9, 2019.   *See id.* at ¶ 29.   Ms. Paugh alleges that Lockheed Martin's position statement was intentionally false or misleading.   *Id.* ¶¶ 30a, 30c–30f.   Ms. Paugh then argues that Lockheed Martin's false or misleading statements in its EEOC position statement are another basis for claims of sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and

the Texas Labor Code.    Pl.'s First Am. Compl. ¶¶ 1, 30a, 30c, ECF No. 10; Resp. 2–4, ECF No. 14.

In its Motion, Lockheed Martin requests the Court dismiss, under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), Ms. Paugh's claims of discrimination and retaliation arising from Lockheed Martin's EEOC position statement.    Mot. 1, 3–6, ECF No. 12.

## RULE 12(B)(6) STANDARD

Rule 12(b)(6) permits dismissal if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).    In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8(a)"), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.    This "demands more than an unadorned . . . accusation." *Iqbal*, 556 U.S. at 678.    A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 555).    "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).

"A claim has facial plausibility when [a party] pleads factual content that allows the court to draw the reasonable inference that the [other side] is liable for the misconduct alleged." *Id.*    "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and

3

common sense." *Id.* at 679.    Consistent with Rule 8(a)(2)'s requirement that the complaint

"show" and not merely allege that a party is entitled to relief, the well-pleaded facts must do

more than "permit the court to infer . . . the mere possibility of misconduct." *Id.*    Thus,

"conclusory statements are 'not entitled to the assumption of truth.'"    *Williams-Boldware v.*

*Denton Cty., Tex.*, 741 F.3d 635, 644 (5th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).

## ANALYSIS

Because Lockheed Martin's alleged false or misleading statements to the EEOC

are not legally actionable adverse employment actions, Ms. Paugh fails to state a claim for

discrimination and retaliation arising from Lockheed Martin's EEOC position statement.

Accordingly, Lockheed Martin's Motion shall be granted.    The Court will not address whether

Lockheed Martin's statements to the EEOC are privileged because the Court will dismiss on

other grounds Ms. Paugh's claims arising from those statements.

### 1. Ms. Paugh's Retaliation Claim Should Be Dismissed.

A plaintiff claiming Title VII[1] retaliation must state that: "(1) she was engaged in

protected activity; (2) she was subjected to an adverse employment action; and (3) there was a

causal connection between the protected activity and the adverse employment action." *Porter v.*

*Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (citing

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012)).    An "adverse

employment action" is not limited to "workplace-related or employment-related retaliatory acts

---

[1] In this Opinion, the Court analyzes Ms. Paugh's Title VII claims for sex discrimination and retaliation. However, the same analysis applies to Ms. Paugh's Texas Labor Code claims because courts look to relevant federal law for guidance when the relevant provisions of Title VII are analogous to the Texas Labor Code.    *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136–37 (Tex. 2015) (citing Tex. Lab. Code § 21.001(1); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592–93 (Tex. 2008) (per curiam)).    Because Title VII and the Texas Labor Code are governed by effectively identical law, identical claims under both can be dismissed under Rule 12(b)(6) through one analysis.    *See Lewis v. City of Dallas*, No. 3:16-CV-0259-N, 2016 WL 11474104, at *5 (N.D. Tex. Dec. 20, 2016). Therefore, Ms. Paugh's claims under both Title VII and Texas Labor Code will be dismissed.

and harm." *Id.* (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006))
(internal quotations omitted).    Rather, "[t]he key question is whether the challenged action is
'materially adverse' in that it is 'harmful to the point that [it] could well dissuade a reasonable
worker from making or supporting a charge of discrimination.'"    *Id.* (quoting *Burlington*, 548
U.S. at 57).    While the standard is objective, "the significance of any given act of retaliation will
often depend upon the particular circumstances."    *Id.* (quoting *Burlington*, 548 U.S. at 69)
(internal quotations omitted).

        In this case, the parties disagree about the second element of a Title VII retaliation
claim.    Ms. Paugh argues that Lockheed Martin's false or misleading statements[2] in its EEOC
position statement are an adverse employment action allowing for a claim of retaliation.    Pl.'s
First Am. Compl. ¶¶ 1–2, 30a–30f, ECF No. 10; Resp. 2–4, ECF No. 14.    Lockheed Martin
moves to dismiss this claim of retaliation by arguing that an employer making false or
misleading statements to the EEOC is not a legally actionable adverse employment action.    Mot.
3–5, ECF No. 12.

        The Court agrees with Lockheed Martin.    The Court is not convinced that
Lockheed Martin's false or misleading statements in its EEOC position statement would have
dissuaded Ms. Paugh from making or supporting a charge of discrimination.    *See Porter*, 810
F.3d at 945 (quoting *Burlington*, 548 U.S. at 57).    For the following three reasons, the Court
holds that Lockheed Martin making false or misleading statements to the EEOC is not a legally
actionable adverse employment action.    *Id.*    Accordingly, Ms. Paugh's retaliation claim should

---

2 In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court accepts all well-pleaded facts
as true, viewing them in the light most favorable to the non-movant, Ms. Paugh.    *In re Katrina Canal Breaches
Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).    Therefore, the Court accepts as true Ms. Paugh's allegations that
Lockheed Martin made false or misleading statements in its EEOC position statement.

be dismissed.

First, an employer's EEOC position statement is just one step of the grievance process for employees claiming discrimination or retaliation under Title VII. *See* Tex. Prac. Guide Employment Practice, EXPG-EMP §§ 8:219–229 (showing that the employer's response, or "position statement," is the subject of just one section, § 8:222, of a practice guide's eleven sections explaining the EEOC administrative process). Employees must exhaust administrative remedies with the EEOC before the EEOC issues a notice giving an employee the right to file a lawsuit in United States district court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). The EEOC process is adversarial in nature. *See* Michael J. Yelnosky, *Filling an Enforcement Void: Using Testers to Uncover and Remedy Discrimination in Hiring for Lower-Skilled, Entry-Level Jobs*, 26 U. Mich. J.L. Reform 403, 483–84 (1993) ("While EEOC investigations theoretically are neutral, the Commission is charged with enforcing Title VII and uncovering violations. The EEOC's relationship with respondents is more realistically viewed as at least potentially adversarial."). Employee and employer submit competing factual allegations, and the EEOC has authority to investigate. *See* 29 C.F.R. § 1601.15; Tex. Prac. Guide Employment Practice, EXPG-EMP §§ 8:219–223, 226.

As a result, a reasonable employee in Ms. Paugh's situation would expect an employer to make competing factual allegations and the EEOC to investigate the competing allegations. An employer's competing factual allegations in its position statement would not discourage a reasonable worker from making or supporting a charge of discrimination. This is particularly the case because the EEOC position statement is just one step of the grievance process before the employee even has the right to file a lawsuit.

Second, Paugh asks the Court to recognize a novel claim of liability for retaliation

6

arising from an employer's false or misleading statement to the EEOC.  Pl.'s First Am. Compl. ¶¶ 1–2, 30a–30f, ECF No. 10; Resp. 2–4, ECF No. 14.   While courts in the Fifth Circuit have yet to consider whether statements to the EEOC or another administrative body can give rise to a separate claim for Title VII retaliation, the Court is convinced by decisions from other jurisdictions that it does not.   Of the cases briefed by the parties, *Goins v. County of Merced* is most like this case.   185 F. Supp. 3d 1224 (E.D. Cal. 2016).   In *Goins*, an employee alleged that, in retaliation for the employee's past complaints, his supervisor wrote false statements about the employee in connection with an administrative appeal of the employee's suspension. *Id.* at 1238.   Like Ms. Paugh in this case, the employee in *Goins* "[did] not allege that [the supervisor]'s statements resulted in an adverse employment action—he alleges such statements *were the adverse action*."   *Id.* at 1239 (emphasis added).   The Eastern District of California held that "[the supervisor]'s alleged statements alone cannot constitute an adverse employment action because they would not deter a reasonable victim from engaging in protected activity, namely seeking relief under Title VII."   *Id.*

Here, Ms. Paugh makes the same argument as the employee in *Goins*—she asserts that false statements made by an employer in an administrative proceeding (in this case, with the EEOC) are an adverse employment action giving rise to a separate claim of retaliation.   Pl.'s First Am. Compl. ¶¶ 1–2, 30a–30f, ECF No. 10; Resp. 2–4, ECF No. 14.   As explained in this section and in agreement with the Eastern District of California, these alleged false statements by Lockheed Martin to the EEOC alone cannot constitute an adverse employment action because they would not deter a reasonable worker from making or supporting a charge of discrimination. *See supra* 4–6; *infra* 6–8.

Finally, alternative remedies caution against a Court's power to recognize novel

claims. *See, e.g., Ziglar v. Abbasi*, 137 S. Ct. 1843, 1848 (2017) ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). Here, alternative means exist to rectify false statements to the EEOC and enforce candor in EEOC proceedings. For example, "[t]he rules of procedure permit a plaintiff to create triable fact issues for summary judgment purposes by using sworn statements such as [ ] declaration[s] to the EEOC." *Jones v. Williams Sonoma, Inc.*, No. 3:03CV147-M-A, 2005 WL 3289361, at *7 (N.D. Miss. Dec. 5, 2005). Additionally, statements to the EEOC can be considered sworn affidavits, subject to penalty of perjury. *See Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 845 (S.D. Tex. 2011). As a result, this Court will not recognize Ms. Paugh's novel claim of liability for retaliation arising from an employer's false or misleading statements to the EEOC.

For the above reasons, the Court holds that Lockheed Martin making false or misleading statements to the EEOC is not a legally actionable adverse employment action. Therefore, Ms. Paugh fails to state a claim for retaliation arising from Lockheed Martin's statements to the EEOC. Lockheed Martin's statements to the EEOC form the sole basis of Ms. Paugh's claim for retaliation. *See, generally*, Pl.'s First Am. Compl. ¶¶ 1–2, 30a–30f. Therefore, Ms. Paugh's entire retaliation claim should be dismissed.

### 2. Ms. Paugh's Discrimination Claim Arising from Lockheed Martin's EEOC Position Statement Should Be Dismissed.

A plaintiff claiming Title VII discrimination must state that the plaintiff: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)

(citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir.2005)).   Unlike "adverse

employment actions" in *retaliation* claims, which are not limited to "workplace-related or

employment-related retaliatory acts and harm," adverse employment actions in *discrimination*

claims include only "ultimate employment decisions such as hiring, granting leave, discharging,

promoting, or compensating."   *Porter*, 810 F.3d at 945; *McCoy*, 492 F.3d at 559–60.   As a

result, an actionable adverse employment action for *discrimination* claims is more restricted than

for *retaliation* claims.   *Brandon v. Sage Corp.*, 808 F.3d 266, 271 (5th Cir. 2015) (describing the

"ultimate employment decision" test for discrimination claims as stricter than the more

expansive "might well be dissuaded" test for retaliation claims (internal quotations omitted)).

   In this case, Ms. Paugh argues that Lockheed Martin making false or misleading

statements to the EEOC is also a basis for sex discrimination.   Pl.'s First Am. Compl. ¶¶ 1–2,

30a–30f, ECF No. 10; Resp. 2–4, ECF No. 14.   As with the retaliation claim, the parties

disagree about whether Lockheed Martin making false or misleading statements to the EEOC is

an adverse employment action.   Pl.'s First Am. Compl. ¶¶ 1–2, 30a–30f, ECF No. 10; Resp. 2–

4, ECF No. 14; Mot. 3–4, ECF No. 12.

   The Court already held that Lockheed Martin making false or misleading

statements to the EEOC is not a legally actionable adverse employment action for Ms. Paugh's

retaliation claim.   *See supra* 4–8.   Because an actionable adverse employment action for

discrimination claims is more restricted than for retaliation claims, this would necessarily imply

that the same action—making false or misleading statements to the EEOC—is also not legally

actionable for discrimination claims.   *See Porter*, 810 F.3d at 945; *McCoy*, 492 F.3d at 559–60.

   Further, adverse employment actions in discrimination claims include only

"ultimate employment decisions such as hiring, granting leave, discharging, promoting, or

compensating." *McCoy*, 492 F.3d at 559–60.   The inquiry focuses on the decision maker because ultimate employment decisions are performed by either ultimate decision-makers or those with influence over the ultimate decision-makers.   *See Hervey v. Mississippi Dep't of Educ.*, 404 F. App'x 865, 873 (5th Cir. 2010) (holding that statements by three teachers allegedly trying to have a principal terminated because of her race were not adverse employment decisions because there was no evidence that the three teachers had influence over the ultimate decision-makers: the superintendent and assistant superintendent).

In the context of an EEOC proceeding, Lockheed Martin is not the ultimate decision-maker.   It is merely a party asserting its position in the adversarial proceeding.   *See* 29 C.F.R. § 1601.15; Tex. Prac. Guide Employment Practice, EXPG-EMP §§ 8:219–223, 226. Lockheed Martin making false or misleading statements to the EEOC will not automatically affect the employment relationship because the EEOC, and ultimately a court, will make the decision on the parties' claims.   Lockheed Martin's statements are analogous to the statements by the three teachers in *Hervey*—while the EEOC and the Court have knowledge of Lockheed Martin's statements, the EEOC and the Court, like the superintendents in *Hervey*, make the ultimate decision on the parties' claims independent of *ex parte* influence.   29 C.F.R. § 1601.15 (granting the EEOC the authority to investigate charges of discrimination); *Taylor*, 296 F.3d 376, 379 (5th Cir. 2002) (stating that plaintiffs must exhaust administrative remedies with the EEOC before receiving notice of the right to sue in federal district court).

For the above reasons, the Court holds that Lockheed Martin making false or misleading statements to the EEOC is not a legally actionable adverse employment action. Therefore, Ms. Paugh fails to state a claim for discrimination arising from Lockheed Martin's statements to the EEOC, and that claim should be dismissed.

### · 3. The Court Will Not Address whether Lockheed Martin's Statements to the EEOC are Privileged.

In the alternative, Lockheed Martin moves for partial dismissal because the statements it made to the EEOC during an investigation into Ms. Paugh's charge of discrimination are absolutely privileged.   Mot. 1, 4–5, ECF No. 12; Reply 4–7, ECF No. 15. Ms. Paugh responds that the privilege afforded to statements made to the EEOC applies only to defamation, not the discrimination and retaliation claims Ms. Paugh makes in this case.   Resp. 5–8, ECF No. 14.

The Fifth Circuit has stated that "[p]rivileges are strongly disfavored in federal practice."  *Am. Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1344 (5th Cir. 1981) (citing *United States v. Nixon*, 418 U.S. 683, 710 (1974)).   Because the Court will dismiss on other grounds Ms. Paugh's claims arising from Lockheed Martin's EEOC position statement, *see supra* 4–10, the issue of privilege will not affect a decision on the Motion.   Thus, the Court will not address whether Lockheed Martin's statements to the EEOC are privileged.

### CONCLUSION

Because the Court holds that Lockheed Martin's alleged false or misleading statements to the EEOC are not legally actionable employment actions for discrimination and retaliation claims, Lockheed Martin's Motion shall be granted.

**IT IS HEREBY ORDERED** that Defendant Lockheed Martin Corporation's "Motion for Partial Dismissal" is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Kylee M. Paugh's **RETALIATION CLAIM** is **DISMISSED**.

11

**IT IS FINALLY ORDERED** that Plaintiff Kylee M. Paugh's

DISCRIMINATION CLAIM ARISING FROM DEFENDANT LOCKHEED MARTIN

CORPORATION'S STATEMENTS TO THE EQUAL EMPLOYMENT OPPORTUNITY

COMMISSION is DISMISSED.

SIGNED this _____22ND_____ day of **July 2020**.


_____
THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE

12