## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **KYLEE M. PAUGH,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-20-CV-154-DB** |
| | § | |
| **LOCKHEED MARTIN** | § | |
| **CORPORATION,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant Lockheed Martin Corporation's ("Lockheed Martin") "Motion for Summary Judgment" ("Motion") filed on March 2, 2021. ECF No. 30.   Plaintiff Kylee M. Paugh ("Ms. Paugh") filed a Response on March 17, 2021. ECF No. 32.   Lockheed Martin filed a Reply on March 23, 2021.   ECF No. 38.   After due consideration, the Court is of the opinion that Lockheed Martin's Motion should be granted.

## BACKGROUND

In 2018, Ms. Paugh worked for Tapestry Solutions, Inc. ("Tapestry Solutions") under a contract Tapestry Solutions had to provide certain services to the United States Department of the Army ("the Army") at Fort Bliss, Texas.   Pl.'s First Am. Compl. ¶¶ 8–9, ECF No. 10; Mot. 3, ECF No. 30.   Tapestry Solutions's contract with the Army expired on December 31, 2018.   Pl.'s First Am. Compl. ¶ 9, ECF No. 10.   On January 1, 2019, Lockheed Martin took over the services Tapestry Solutions was previously contracted to provide to the Army.   Pl.'s First Am. Compl. ¶¶ 11–12, ECF No. 10; Mot. 3, ECF No. 30.   Fewer positions for employees were funded by the Army under the new contract with Lockheed Martin than the predecessor contract with Tapestry Solutions through which Ms. Paugh was employed.   Mot. 4, ECF No. 30.

### 1. Ms. Paugh's Factual Allegations

Ms. Paugh argues that, as the successor contractor to Tapestry Solutions, Lockheed Martin was required to offer Tapestry Solutions employees, including herself, "a right of first refusal of employment." Pl.'s First Am. Compl. ¶¶ 16, 18, ECF No. 10 (citing Executive Order 13495, Nondisplacement of Qualified Workers Under Service Contracts ("Executive Order 13495"), 74 FR 6103; Federal Acquisition Regulation, 48 CFR 52.222-17, Nondisplacement of Qualified Workers; McNamara-O'Hara Service Contract Act, 41 U.S.C. §§ 6701–07); Resp. 7–8, ECF No. 32.    Furthermore, Ms. Paugh claims that Lockheed Martin was not allowed to post employment openings under the contract until it provided the right of first refusal of employment.    Pl.'s First Am. Compl. ¶¶ 17, 19, ECF No. 10.

Ms. Paugh alleges that, despite such requirement, Lockheed Martin never offered her a right of first refusal of employment.    *Id.* ¶ 20.    Instead, Lockheed Martin "posted job openings and required the Tapestry Solutions employees to apply for positions of employment." *Id.* ¶ 21.    Ms. Paugh applied for nine positions with Lockheed Martin but was not hired for any of them.    *Id.* ¶ 21; Mot. 3, ECF No. 30.    To fill those nine positions, Ms. Paugh claims, "Lockheed Martin offered rights of first refusal to the eight male Tapestry Solutions' employees, and the eight workers accepted the offers for the positions and were hired."    Pl.'s First Am. Compl. ¶ 21, ECF No. 10; *see also* Resp. 10, ECF No. 32.    Further, "Lockheed Martin hired one man from outside Tapestry Solutions and Lockheed Martin."    Pl.'s First Am. Compl. ¶ 21, ECF No. 10.

### 2. Lockheed Martin's Factual Allegations

Lockheed Martin asserts that, because fewer positions were funded under their contract than the predecessor contract, it "posted individual 'job requisitions' for each position it

needed to fill" and required that employees under the predecessor contract apply to fill those positions.[1]   Mot. 4, ECF No. 30.   Lockheed Martin argues that it was not obligated under Executive Order 13495 to affirmatively offer each Tapestry Solutions employee his or her corresponding position under the new contract, as Ms. Paugh maintains.   *Id.* at 5.   Instead, Lockheed Martin "had a preference" for applicants who were employed under the predecessor contract.   *Id.* at 4.   When multiple applicants who were employed under the predecessor contract applied for the same job requisition, it reviewed the applications and selected the best qualified candidate for each position.   *Id.*

Of the nine job requisitions that Ms. Paugh applied for, only two were filled.   *Id.* at 6.   The other seven job requisitions were either cancelled or closed with no candidates hired. *Id.*   Lockheed Martin maintains that the two candidates hired over Ms. Paugh were the best-qualified candidates for their respective job requisition.   *Id.*   Further, Lockheed Martin states that Ms. Paugh did not apply for any of the job requisitions for which Ms. Paugh's male colleagues at Tapestry Solutions were allegedly hired.   *Id.* at 6–7.

## LEGAL STANDARDS

Lockheed Martin has filed a motion for summary judgment.   "The court shall

---

1 The distinction between "job requisition," "position," and "job title" is a point of contention between the parties. *See* Mot. 13–14, ECF No. 30 ("Paugh may argue that, because some of these men were hired for job requisitions that had the same job title as the requisitions she applied for, the Court should deem her to have applied for purposes of establishing a prima facie case."); Reply 6, ECF No. 38 ("At her deposition, however, Paugh admitted that she did not understand the difference between a requisition number and a job title.").   According to Lockheed Martin, "[a] job requisition is an alphanumeric identifier that Lockheed Martin uses to facilitate the hiring of a new employee.   Each open position is associated with a unique requisition identifier."   Mot. 4, ECF No. 30.   Lockheed Martin adds that "each person it hired applied for the specific job requisition number (as opposed to job title) to which the person was hired."   Reply 6, ECF No. 38.

     In this Opinion, the Court will attempt to maintain the distinction between "job requisition," "position," and "job title" as best as it understands Lockheed Martin to be making the distinction.   It will use "job requisition" to refer to a specific job posting to which applicants apply, "position" to refer to discrete units of employment to which an applicant is hired, and "job title" to refer to a broad category of employment responsibility, for which there might be multiple job requisitions.   At no point should the Court's use of one term instead of another be understood as determining the rights of the parties.

grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party

asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to

particular parts of materials in the record . . . ; or showing that the materials cited do not establish

. . . a genuine dispute, or that an adverse party cannot produce admissible evidence to support the

fact." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

   "Initially, the moving party bears the burden of demonstrating the absence of a

genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th

Cir. 2012) (citing *Celotex*, 477 U.S. at 323). Where the burden of proof lies with the

nonmoving party, the moving party may satisfy its initial burden by "'showing'—that is,

pointing out to the district court—that there is an absence of evidence to support the nonmoving

party's case." *Celotex*, 477 U.S. at 325. While the moving party "must demonstrate the

absence of a genuine issue of material fact, it does not need to negate the elements of the

nonmovant's case." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

   A fact is material only if it would permit "a reasonable jury . . . [to] return a

verdict for the nonmoving party" and "might affect the outcome of the suit." *Douglass v.*

*United Servs. Auto. Ass'n*, 65 F.3d 452, 458–59 (5th Cir. 1995), *aff'd en banc*, 79 F.3d 1415 (5th

Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986)). "If the

moving party fails to meet its initial burden, the motion for summary judgment must be denied,

regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (citation omitted).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* The nonmovant "must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Id.* "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations omitted). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Duffie*, 600 F.3d at 371 (citing *Liberty Lobby*, 477 U.S. at 255). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby*, 477 U.S. at 255.

## ANALYSIS

Ms. Paugh makes a claim of sex discrimination[2] under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Texas Labor Code,[3] asserting that "her sex was a motivating factor and consideration in [] Lockheed Martin's adverse employment decisions" against her. Am. Compl. ¶¶ 1, 34, ECF No. 10. The Court will hold that Ms. Paugh's claim of sex discrimination based on Lockheed Martin's alleged discriminatory implementation of Executive Order 13495 is cognizable under Title VII. The Court will then determine Lockheed

---

2 Ms. Paugh also made a claim of retaliation arising from Lockheed Martin making false and misleading statements to the Equal Employment Opportunity Commission. Am. Complaint, ECF No. 10. This claim of retaliation was dismissed by this Court on July 22, 2020. Mem. Op., ECF No. 16.

3 In this Opinion, the Court analyzes Ms. Paugh's Title VII claims for sex discrimination. However, the same analysis applies to Ms. Paugh's Texas Labor Code claims, as courts look to federal law for guidance when provisions of Title VII are analogous to the relevant portions of the Texas Labor Code. *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136–37 (Tex. 2015) (citing Tex. Lab. Code § 21.001(1); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592–93 (Tex. 2008) (per curiam)).

Martin's obligations to predecessor employees, such as Ms. Paugh, under Executive Order 13495 and its contract with the Army.   Finally, the Court will find that Lockheed Martin's Motion should be granted because Ms. Paugh has not met the burden of identifying genuine disputes as to any material fact regarding her claims of sex discrimination.

### 1. Ms. Paugh's Claim of Sex Discrimination Based on Lockheed Martin's Alleged Discriminatory Implementation of Executive Order 13495 is Cognizable Under Title VII.

The Court will first determine if Ms. Paugh may make a claim for violation of Title VII and the Texas Labor Code based on Lockheed Martin's alleged discriminatory implementation of Executive Order 13495.   Lockheed Martin argues that Ms. Paugh may not make such a claim because Executive Order 13495 "specifically states that it 'is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against . . . any other person.'"   Mot. 15, ECF No. 30 (quoting Executive Order 13495 § 9(c), 74 FR at 6106).   Lockheed Martin further asserts that "only the 'Secretary of Labor . . . is responsible for investigating and obtaining compliance with [the] order.'"   *Id.* 30 (quoting Executive Order 13495 § 6(a), 74 FR at 6105).

Courts have held, as Lockheed Martin argues, that Executive Order 13495 does not create a right of action for employees who are denied a "right of first refusal."   *See Atterbury v. United States Marshals Serv.*, No. 12-CV-502-A, 2018 WL 2100600, at *11 (W.D.N.Y. May 7, 2018), rev'd and remanded on other grounds, 941 F.3d 56 (2d Cir. 2019); *McClellan v. Skytech Enterprises, Ltd.*, No. CIV-12-202-RAW, 2012 WL 3156861, at *2 (E.D. Okla. Aug. 3, 2012).

However, Ms. Paugh is not suing under Executive Order 13495.   Am. Compl. 2, 13, ECF No. 10.   Rather, she is suing under Title VII and the Texas Labor Code for Lockheed

Martin's allegedly discriminatory implementation of Executive Order 13495.   *Id.*   In *Sorber*, a court in the Western District of Texas suggests that implementation of Executive Order 13495 can be subject to anti-discrimination statutes, including Title VII.   *See Sorber v. Sec. Walls, LLC*, No. A-18-CV-1088-SH, 2020 WL 2850227, at *2, *12 (W.D. Tex. June 1, 2020).   The plaintiffs in *Sorber* were contracted security guards at the Austin IRS offices, and the defendant was the successor contractor for the security services.   *Id.* at *1.   The plaintiffs claimed they were discriminated against when they were denied a "right of first refusal" in accordance with Executive Order 13495.   *Id.* at *1–2.   They claimed the successor contractor did not continue their employment because they failed or did not take either the medical examination or physical fitness test required by the successor contractor for continued employment.   *Id.* at *1–2. Accordingly, the plaintiffs made claims of discrimination under three anti-discrimination statutes, including a claim for sex discrimination under Title VII.   *Id.* at *2.   The court denied summary judgment on the Title VII claim because the defendant could have potentially violated Title VII by denying two plaintiffs a right of first refusal under Executive Order 13495.   *Id.* at *12.

Like the plaintiffs in *Sorber*, Ms. Paugh is making a claim for sex discrimination under Title VII for Lockheed Martin's alleged discriminatory implementation of Executive Order 13495.   Am. Compl. 2, 13, ECF No. 10.   Thus, the Court will hold here that Ms. Paugh can make such a claim.   Accordingly, the Court will now turn to Lockheed Martin's obligations under Executive Order 13495 and its contract with the Army.

### 2. Lockheed Martin's Actions Were Consistent with its Obligations under Executive Order 13495 and its Contract with the Army when it Utilized Employment Screening Processes.

Executive Order 13495 applies to contracts the federal government enter to

procure services "[w]hen a service contract expires, and a follow-on contract is awarded for the

same service."   Executive Order 13495, 74 FR at 6103.   It provides that:

> service contracts . . . *shall include a clause* that requires the contractor, and its subcontractors, under a contract that succeeds a contract for performance of *the same or similar services at the same location*, to offer those employees (other than managerial and supervisory employees) employed under the predecessor contract whose employment will be terminated as a result of the award of the successor contract, a right of first refusal of employment under the contract in positions for which they are qualified.

*Id.* (emphasis added).   Both Lockheed Martin and Ms. Paugh agree that Lockheed Martin's

contract to provide certain services to the Army ("Lockheed Martin Contract") has such a

"Nondisplacement of Qualified Workers" clause.   Mot. 15, ECF No. 17; Resp. 5–6, ECF No.

32.   It reads:

> The Contractor and its subcontractors shall, except as otherwise provided herein, in good faith offer those service employees employed under the predecessor contract whose employment will be terminated as a result of award of this contract or the expiration of the contract under which the service employees were hired, a right of first refusal of employment under this contract under which the service employees were hired, a right of first refusal of employment under this contract in positions for which the service employees are qualified.

Lockheed Martin Contract 7, ECF No. 32-6.

The Lockheed Martin Contract also provides for the situation where fewer positions

are funded under the contract than the predecessor contract:

> - "The Contractor and its subcontractors shall determine the number of service employees necessary for efficient performance of this contract and may elect to employ fewer employees than the predecessor contractor employed in connection with performance of the work."
> - "The Successor Contractor and its subcontractors shall decide any question concerning a service employee's qualifications based upon the individual's education and employment history, with particular emphasis on the employee's experience on the

> predecessor contract, and the Contractor may utilize
> employment screening processes only when such processes are
> provided for by the contracting agency, are conditions of the
> service contract, and are consistent with Executive Order
> 13495."

*Id.* at 7–8.

Both Lockheed Martin and Ms. Paugh acknowledge that the Lockheed Martin Contract funded fewer positions than the predecessor contract.   Mot. 4, ECF No. 30; Resp. 9, ECF No. 18.   However, Lockheed Martin and Ms. Paugh disagree about how these fact affects Lockheed Martin's particular obligations under Executive Order 13495 and the "Nondisplacement of Qualified Workers" clause of the contract.

Lockheed Martin argues that, because fewer positions were funded under their contract than the predecessor contract, it was permitted to post job requisitions for each position it needed to fill and require employees under the predecessor contract to apply for those job requisitions.   Mot. 4, ECF No. 30.   Lockheed Martin further argues that it complied with Executive Order 13495 and the "Nondisplacement of Qualified Workers" clause by giving preference to applicants who were employed under the predecessor contract.   *Id.*   When multiple applicants who were employed under the predecessor contract applied for the same job requisition, it reviewed the applications and selected the best qualified candidate for each position.   *Id.*

On the other hand, Ms. Paugh has a more particularized interpretation of Executive Order 13495 and the "Nondisplacement of Qualified Workers" clause.   Ms. Paugh argues that "Lockheed Martin hired the same number of employees to work at Range 66 A&B where Ms. Paugh and her male coworkers worked for Tapestry Solutions."   Resp. 9, ECF No. 32.   Thus, she argues, the services Lockheed Martin contracted with the Army to perform at

Range 66 A&B constitute "the same or similar services at the same location" as those performed under the Tapestry Solutions contract.   *Id.*   Therefore, Ms. Paugh argues, particularly regarding Range 66 A&B, Lockheed Martin was required to offer rights of first refusal to all incumbents and could not require them to apply for continued employment nor engage in qualitative comparison between incumbent applicants.   *Id.* at 9–10.   Ms. Paugh argues in the alternative that Lockheed Martin did offer rights of first refusal to the male incumbents but not to her, thereby discriminating against her on the basis of sex.   *Id.*

The Court will reject Ms. Paugh's particularized interpretation of Executive Order 13495 and the "Nondisplacement of Qualified Workers" clause for two reasons.   First, Ms. Paugh's particularized interpretation of the "Nondisplacement of Qualified Workers" clause is contrary to common sense.   *See Condea Vista Co. v. Gencorp Inc.*, 64 F. App'x 417 (5th Cir. 2003) (affirming "common sense interpretation" of an agreement).   Any contract for services can be particularized to such an extent that the unit of comparison is each individual employee at the discrete location they work.   Interpreting the contract in such a way would lead to a requirement that employers offer rights of first refusal to all predecessor employees, even when the successor contract provides for fewer positions.   That would be contrary to common sense.

Second, Ms. Paugh's particularized interpretation—implying successor contractors are required to offer rights of first refusal to all predecessor employees—would render provisions of the Lockheed Martin Contract superfluous.   *See Transitional Learning Cmty. at Galveston, Inc. v. U.S. Off. of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000) ("[A] contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous."). For example, the clause in the Lockheed Martin Contract providing that it "may elect to employ

10

fewer employees than the predecessor contractor employed in connection with performance of

the work" would be rendered superfluous if Lockheed Martin was required to offer rights of first

refusal to all predecessor employees, as Ms. Paugh's particularized interpretation implies.

Lockheed Martin Contract 7, ECF No. 32-6.   For another example, the Lockheed Martin

Contract provides that it "may utilize employment screening processes [on incumbent

employees]."   Lockheed Martin Contract 8, ECF No. 32-6.   As Ms. Paugh notes,

"[p]resumably this requirement applies when the successor contractor will hire fewer employees

than the predecessor contractor."   Resp. 9, ECF No. 32.   However, under Ms. Paugh's

particularized interpretation, this requirement would never apply because employers would be

required to offer rights of first refusal to all predecessor employees.   *See supra* 10.   Thus, the

requirement regarding employment screening processes would be rendered superfluous.

For these two reasons, the Court holds that because fewer positions were funded

under the Lockheed Martin Contract than the predecessor contract, Lockheed Martin acted

consistent with the contract and with Executive Order 13495 when it required Range 66 A&B

incumbent employees to apply for job requisitions and engaged in employment screening

processes to determine the best qualified candidate when more than one incumbent employee

applied.   Executive Order 13495, 74 FR 6103.   This holding essentially turns Ms. Paugh's

discriminatory implementation claims into failure-to-hire claims when, as she alleges, incumbent

men were hired over her.   Accordingly, the Court will now turn to whether Lockheed Martin

discriminated against Ms. Paugh in its employment screening processes.

### 3.  The Court Will Grant Summary Judgment and Dismiss Ms. Paugh's Claims of Sex Discrimination.

Where, as here, the employee proffers no direct evidence of sex discrimination,

courts employ the *McDonnell Douglas* burden-shifting framework to determine whether the

employee's claims survive summary judgment. *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 654 (Tex. App.—Dallas 2012, no pet.); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). The employee bears the initial burden of establishing a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of sex discrimination, the employee must show: (1) she is a member of a protected group; (2) she applied and was qualified for the position at issue; (3) she was rejected despite being qualified; and (4) others similarly qualified but outside the protected class were treated more favorably. *Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 332 (5th Cir. 2019).

If the employee successfully establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment decision. *See McDonnell Douglas*, 411 U.S. at 802. The employer's burden is one of production only, however, and the ultimate burden of persuasion remains with the employee at all times. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the employer proffers a legitimate, non-discriminatory reason for its employment decision, the employee receives an opportunity to demonstrate that the given reason is pretext for retaliation. *See McDonnell Douglas*, 411 U.S. at 804.

Before undertaking *McDonnell Douglas* analysis, the Court notes that many of Ms. Paugh's claims for sex discrimination concern the results of Lockheed Martin's employment screening processes as a whole. *See, e.g.*, Resp. 12, 14, ECF No. 32. Ms. Paugh repeatedly points out that eight of her male Tapestry Solutions colleagues were hired by Lockheed Martin while she was not. Pl.'s First Am. Compl. ¶ 21, ECF No. 10; *see also* Resp. 12, ECF No. 32 ("It cannot be a coincidence that the eight men were hired to work on the same range where they had been working"; "Mr. Murphy hired all eight of Ms. Paugh's male coworkers to work at

12

Range 66 A&B.   It cannot possibly be a coincidence that of the 106 employees he was going to hire, all eight men would be hired to work on that range.").

Such statements amount to an assertion of statistical disparity.   However, pointing out purported statistical discrepancies in hiring is not enough to demonstrate discrimination.   *See Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008) (holding that an individual plaintiff pursuing an individual claim of discrimination may not rely on general statistical evidence); *Thompson v. Leland Police Dep't*, 633 F.2d 1111, 1114 (5th Cir. 1980) ("[S]tatistical evidence alone does not establish or necessarily imply racially discriminatory practices.").   Moreover, the Court's consideration of individual failure-to-hire claims, like the ones Ms. Paugh makes, center on the discrete positions applied for, not on any alleged pattern or practice of discrimination.  · *See Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1021 (5th Cir. 1990) (holding that Title VII requires that the plaintiff apply for the position to make a failure-to-hire claim); *Taylor*, 554 F.3d at 523 ("[A]n individual plaintiff pursuing an· *individual* claim may not rely on the type of pattern-or-practice evidence that is acceptable in class action suits alleging similar conduct, such as general statistical evidence.").   Accordingly, the Court, in determining whether Lockheed Martin discriminated against Ms. Paugh, will consider only the employment screening processes for the nine job requisitions to which Ms. Paugh applied; it will not consider her assertions about Lockheed Martin's employment screening processes as a whole.

> **a. Ms. Paugh has not identified genuine issues of material fact regarding the seven job requisitions that Ms. Paugh applied to that were cancelled or closed.**

Lockheed Martin asserts that seven of the nine job requisitions that Ms. Paugh applied for were either canceled or closed with no candidate hired.   Mot. 6, ECF No. 30.

13

Lockheed Martin moves for summary judgment on Ms. Paugh's claims of sex discrimination arising from these seven job requisitions because Ms. Paugh "cannot establish a prima facie case of discrimination based on these seven requisitions because she cannot prove that similarly situated non-protected employees were treated more favorably than her."  *Id.* at 10.

Additionally, Lockheed Martin moves for summary judgment on claims related to the seven job requisitions because it "has presented a legitimate, non-discriminatory and non-retaliatory reason for not selecting Paugh for the requisitions, namely that the requisitions were cancelled or closed."  *Id.*  Lockheed Martin adds that Ms. Paugh has no evidence that its purported legitimate, non-discriminatory reason for not selecting her is a pretext for sex discrimination.  *Id.* at 11.

Ms. Paugh responds that Lockheed Martin's cancellation of the job requisitions because of the Army's changing needs is pretext for discrimination.  Resp. 15–17, ECF No. 32. Specifically, Ms. Paugh claims Lockheed Martin knew about the Army's needs months before the cancellation.  *Id.* at 15.  Ms. Paugh also claims that she applied for a job requisition months before it was cancelled.  *Id.* at 16–17.

The Court agrees with Lockheed Martin.  To make a prima facie case of discrimination, the plaintiff must show that "others similarly qualified but outside the protected class were treated more favorably" than her.  *Wittmer*, 915 F.3d at 332.  Ms. Paugh does not do that with regards to the seven job requisitions she applied to that were cancelled.  For example, Ms. Paugh contends neither that the job requisitions were kept open for men nor that men were hired through those job requisitions.  *See, generally*, Resp. 16–18, ECF No. 32.

Failing to make a prima facie case is enough to grant summary judgment on a plaintiff's claim.  *McDonnell Douglas*, 411 U.S. at 802–04.  But even if she could make a

prima facie case, Ms. Paugh's claim would still fail, as she cannot demonstrate that Lockheed Martin's legitimate, non-discriminatory reason for not hiring her—because the requisitions were cancelled or closed—is a pretext for discrimination.    An employee alleging that an employer's stated reason for an action is a pretext for discrimination must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."   *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 143 (2000).    Ms. Paugh's assertion that Lockheed Martin had knowledge of the Army's needs months before the cancellation of the job requisition is not evidence of pretext.    On the contrary, it is logical that a job requisition would be open for applications at some point before it is cancelled.    Moreover, "[t]iming standing alone is not sufficient absent other evidence of pretext."   *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 330 (5th Cir.1998).    Thus, Ms. Paugh's contentions that Lockheed Martin had knowledge of the Army's needs months before the cancellation and she applied for a job requisition months before it was cancelled is not sufficient to establish that Lockheed Martin's stated reason for not hiring her is pretext.

Ms. Paugh can neither make a prima facie case of sex discrimination regarding the seven job requisitions that she applied to that were cancelled nor demonstrate that the cancellations were a pretext.   *McDonnell Douglas*, 411 U.S. at 802.    Accordingly, Ms. Paugh has not met the burden of identifying genuine issues of material fact on her claims of sex discrimination related to those seven job requisitions.   *Cannata,* 700 F.3d at 172.    Thus, summary judgment will be granted.

### b.  Ms. Paugh has not identified genuine issues of material fact regarding the two job requisitions that Ms. Paugh applied to that were filled.

Lockheed Martin asserts that two of the nine job requisitions that Ms. Paugh applied to were filled by two males employed under the predecessor contract, Saul Padilla ("Mr.

15

Padilla") and Eddie Dominguez ("Mr. Dominguez").    Mot. 6, 11, ECF No. 30.    Lockheed

Martin purports to have hired Mr. Padilla and Mr. Dominguez over Ms. Paugh for a legitimate,

non-discriminatory reason: they were the best qualified candidates.    *Id.* at 4.    Lockheed Martin

moves for summary judgment on Ms. Paugh's claims of sex discrimination arising from these

two job requisitions because Ms. Paugh "has no evidence that Lockheed Martin's legitimate,

non-discriminatory reason for not hiring her for those requisitions—she was not the best

qualified candidate—is pretext for discrimination."    *Id.* at 11.

  Demonstrating that qualifications are a pretext for discrimination requires

showing that the plaintiff is "'clearly better qualified' (as opposed to merely better or as

qualified) than the employees who are selected."    *Moss v. BMC Software, Inc.*, 610 F.3d 917,

922–23 (5th Cir. 2010) (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th

Cir.1995)).    Ms. Paugh cannot do so with the two comparators she identifies, Mr. Padilla and

Mr. Dominguez.    On the contrary, she admits she does not know whether she is more qualified

than they are for their respective positions.    Dep. of Ms. Paugh 19, ECF No. 30-2.    Because

Ms. Paugh cannot show that she is "clearly better qualified" than Mr. Padilla and Mr.

Dominguez, she cannot demonstrate that Lockheed Martin's assertion that they were more

qualified is a pretext for discrimination.    *Moss*, 610 F.3d at 922–23.

  Ms. Paugh also states that "Mr. Saul Padilla applied for a General Maintenance

Worker position and was offered the position, but was reclassified as an Electronic Technician."

Resp. 16, ECF No. 32 (internal citations omitted).    She argues that Mr. Padilla's reclassification

to a different job title is evidence of pretext because Lockheed Martin changed hiring practices

for a man but not her.    Resp. 16, ECF No. 32.

16

Ms. Paugh's argument about Mr. Padilla's reclassification is also unfounded.   As explained below, Title VII requires that the plaintiff apply for the position to make a prima facie case for failure-to-hire.   *See infra* 19–20.   Ms. Paugh did not apply for the Electronic Technician position to which Mr. Padilla was reclassified.

Accordingly, Ms. Paugh's claims that she was discriminated by Lockheed Martin because Mr. Padilla and Mr. Dominguez were hired over her will not survive summary judgement.   Ms. Paugh cannot demonstrate that Lockheed Martin's claim that Mr. Padilla and Mr. Dominguez were more qualified is a pretext for discrimination.   Ms. Paugh also cannot make a prima facie case that she was discriminated against when Mr. Padilla was hired and reclassified while she was not.   Accordingly, Ms. Paugh has not met the burden of identifying genuine issues of material fact relating to her claims of sex discrimination based on the hiring of Mr. Padilla and Mr. Dominguez.   *McDonnell Douglas*, 411 U.S. at 802; *Cannata,* 700 F.3d at 172.   Thus, Lockheed Martin's Motion will be granted as it relates to those claims.

### c.  **Ms. Paugh has not identified genuine issues of material fact regarding the nine job requisitions that Ms. Paugh did not apply for.**

Ms. Paugh also makes claims of sex discrimination regarding nine other positions filled by males, eight of them her colleagues at Tapestry Solutions and one an incumbent from outside Tapestry Solutions.   Pl.'s First Am. Compl. ¶ 21, ECF No. 10; Resp. 10, ECF No. 32. Ms. Paugh identifies Adam Granger ("Mr. Granger") and Sal Reyes ("Mr. Reyes") as male colleagues at Tapestry Solutions who were hired.   Pl.'s First Am. Compl. ¶ 23, ECF No. 10. She identifies James Mendez ("Mr. Mendez") as the male from outside Tapestry Solutions who was hired.   *Id.* ¶ 21.   Lockheed Martin states that Mr. Mendez was an incumbent.   Mot. 13 n.33, ECF No. 30.   Ms. Paugh does not contest Mr. Mendez's incumbent status.   *See, generally, Resp.*, ECF No. 32.   Mr. Mendez's hiring is particularly contentious to Ms. Paugh

because she identifies him as the candidate who "took her position."   Dep. of Ms. Paugh 27, ECF No. 30-2; *see also* Resp. 10, ECF No. 32.   Regarding Mr. Mendez's qualifications, Ms. Paugh states

> While Mr. Mendez may be more educated than Ms. Paugh and have more experience at other ranges, he lacked what Mr. Murphy demonstrated he wanted from the men who worked at the range and what the Government wanted, familiarity with the Government's personnel, facilities, and requirements at Range 66 A&B that would promote the continuity of services being provided there.

Resp. 13, ECF No. 32.   Because Ms. Paugh worked at Range 66 A&B and Mr. Mendez did not, Ms. Paugh argues that "there is a disparity in qualifications of such weight and significance that no reasonable person. . . could have chosen Mr. Mendez over Ms. Paugh for the position." Resp. 15, ECF No. 32.

Lockheed Martin responds that Ms. Paugh did not apply for any of the nine job requisitions through which those nine males where hired. Mot. 6–7, ECF No. 30.   Lockheed Martin moves for summary judgment on Ms. Paugh's claims of sex discrimination arising from these nine job requisitions because Ms. Paugh did not apply for them.   Mot. 13, ECF No. 30. Thus, Lockheed Martin argues, Ms. Paugh cannot establish a prima facie case on those job requisitions.   *Id.*

Ms. Paugh suggests that, because she was an incumbent, she should have been considered for positions for which she did not apply.   *See* Resp. 15–16, ECF No. 32.   She argues that other incumbents took positions for which they had not apply.   *Id.*   Specifically, Ms. Paugh alleges that because "[m]en applied for General Maintenance Worker positions and were hired as such and later reclassified to Electronic Technician positions[,] it was not necessary to apply for Electronic Technician positions."   *Id.*   She identifies Hector Villalobos,

18

Thomas Lawrence, and Mr. Padilla as those men.   *Id.*   On the basis of such reclassification,

Ms. Paugh argues that

> Lockheed Martin is willing to change its hiring practices, as suits its fancy.   It made changes in its practices for men, but not for Ms. Paugh.   For these reasons, the alleged requirement for an application for an Electronic Technician position is a pretext.

*Id.* at 16.

It is well established that Title VII requires that the plaintiff apply for the position

to make a prima facie case for a failure-to-hire claim.   *See Fields*, 906 F.2d at 1021; *Morris v.*

*Fru-Con Const. Corp.*, No. CIV.A. C-05-565, 2006 WL 2794932, at *4 (S.D. Tex. Sept. 26,

2006).   The plaintiff in *Morris* made an argument similar to Ms. Paugh's about not being hired

for positions for which he did not apply.   *Morris*, 2006 WL 2794932, at *4.   He argued "that

he effectively applied for several positions by virtue of his status as a former Fru-Con employee"

and "that Fru-Con ha[d] a practice of considering former employees eligible and subject to

reassignment to other positions after they complete an assignment with Fru-Con Corporation."

*Id.* (internal quotations omitted).   The *Morris* court rejected the argument because the plaintiff

presented no evidence to show that the employer's hiring policy automatically considered former

employees for reassignment; rather, the employer's hiring policy required that an application be

submitted, which plaintiff never did.   *Id.* at *4–5.   Therefore, he could not state a prima facie

case.   *Id.*

Like the plaintiff in *Morris*, Ms. Paugh relies on an unsupported assertion that she

should have been considered for positions for which she did not apply.   She presents no

evidence that the reclassifications to different job titles were related to a Lockheed Martin hiring

policy that should have led to her being considered for positions under that job title, rather than

simply being responses to the Army's changing needs, as Lockheed Martin asserts.[4]  *Id.*; Reply 6, ECF No. 38.    As a result, the Court will hold that Ms. Paugh did not "effectively apply" for the Electronic Technician positions as required to make a prima facie case for failure-to-hire. *Morris*, 2006 WL 2794932, at *4–5.

Ms. Paugh points to some of her male Tapestry Solutions colleagues being reclassified to a different job title.    Resp. 15–16, ECF No. 32.    But such a statistical argument is not enough to establish discrimination.    *Taylor*, 554 F.3d at 523; *Thompson*, 633 F.2d at 1114.

Accordingly, the Court will find that Ms. Paugh has not made a prima facie case of discrimination based on Lockheed Martin's failure to hire her for positions for which she did not apply.    Ms. Paugh also cannot show that Lockheed Martin's claim that more qualified candidates were hired is a pretext for discrimination.    Demonstrating that purported qualifications of other candidates are a pretext to discrimination requires showing that the plaintiff is "clearly better qualified."    *Moss*, 610 F.3d at 922–23.    Ms. Paugh cannot do so against the comparators she identifies.    Mr. Granger and Mr. Reyes had supervisory experience while she did not.    Dep. of Ms. Paugh 3, ECF No. 30-2.    Further, Ms. Paugh even acknowledges that Mr. Mendez was more educated and experienced than her.    Resp. 13, ECF No. 32.    Thus, Ms. Paugh cannot demonstrate that she was clearly better qualified than the comparators she identified. Ms. Paugh's failure to show that Lockheed Martin's legitimate, non-discriminatory reason for not hiring her is pretextual is another reason to dismiss her claim.    *McDonnell Douglas*, 411 U.S. at 802–04.

---

4 *See supra* 3 n.1 for explanation of distinction between "job requisition," "position," and "job title."

## CONCLUSION

The Court holds that although Ms. Paugh's claim of sex discrimination for Lockheed Martin's alleged discriminatory implementation of Executive Order 13495 is cognizable under Title VII and the Texas Labor Code, Lockheed Martin acted consistent with its contract with the Army and with Executive Order 13495 when it required Ms. Paugh to apply for job requisitions and engaged in employment screening processes to determine the best qualified candidate when more than one incumbent employee applied.    The Court also holds that there are no genuine disputes of material fact regarding Ms. Paugh's claims that Lockheed Martin's employment screening processes were discriminatory, and it holds that Ms. Paugh cannot make a claim of discrimination regarding positions to which she did not apply.    Therefore, summary judgment should be granted on Ms. Paugh's claims of sex discrimination.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Lockheed Martin Corporation's "Motion for Summary Judgment" filed on March 2, 2021 is **GRANTED.**

**SIGNED** this _____7th_____ day of **May 2021.**

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**